## MILNER v. UNITED STATES.

## HILLIARD v. SAME.

(Circuit Court of Appeals, Third Circuit. July 12, 1926.)

Nos. 3427, 3428.

Conspiracy ⬤⟳47.

Evidence *held* to sustain conviction of defendants for conspiracy to conduct illegal brewery.

Thompson, District Judge, dissenting in Hilliard Case.

In Error to the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

Criminal prosecution by the United States against A. C. Milner, Thomas J. Hilliard, and others. Judgment of conviction, and defendants named separately bring error. Affirmed.

J. Reed Craig, of Erie, Pa., for plaintiffs in error.

Joseph A. Richardson, of Pittsburgh, Pa., for the United States.

Before BUFFINGTON, and DAVIS, Circuit Judges, and THOMPSON, District Judge.

BUFFINGTON, Circuit Judge. In the court below A. C. Milner and Thomas J. Hilliard, plaintiffs in error, who were indicted with William Hagenlocher, R. C. Call, H. R. Foster, the Hill-Mill Dairy Products Company, a corporation, et al., for carrying on an illegal brewery, were convicted, and, on sentence of imprisonment, sued out this writ. The question involved is whether the case was one in which the court should have given en binding instructions in their behalf and directed an acquittal. After a careful study of the proofs, we are of opinion the court committed no error. Without entering into the connection of all of these defendants, charged as co-conspirators, and referring to them only so far as is necessary to explain the status of Milner and Hilliard, we now turn to the proofs.

These two men were the owners of a valuable piece of real estate in a fairly prominent place in the considerable city of Erie, Pa. On October 24, 1924, the property was raided, and it was found to contain the equipment of a first-class brewery, was in active operation, and had large quantities of contraband beer on hand. The contention of the government was that these two men, in connection with the other defendants, were carrying on an extensive brewery business under the guise of a milk and dairy company. To substantiate the government's case, there was proof that Hagenlocher was a real estate agent in the city of Erie; that the property in question, while nominally leased to one Smith, was really under the occupation of these two defendants, who were large stockholders in the Dairy Products Company, which was originated by Hagenlocher, who secured its incorporation on the 1st of February, 1924, in connection with Hilliard and Milner; the former holding 50 shares of its stock, Milner 50, Foster 45, and Hagenlocher 5 shares. On July 22, 1924, Hagenlocher sold, as the agent of the owner in California, this property to these two men for $12,000 cash; they also paying him $300 commission. The story of Hagenlocher was that he had leased this property to a man in Cleveland by the name of Smith on April 20, 1923, and renewed the lease on January 28, 1924, at a rental of $150 a month; that he sold the property to the two defendants, who made no examination of it at the time, never saw the tenant, and never visited the property. No explanation was given in any way as to how the expensive brewing machinery came on the premises, and both men denied ever having been near it.

In point of fact, when the property was raided there was a delay in the officers getting into the premises, which were finally broken into. Milner and a man named Connors were arrested, while the raid was going on, going away from the direction of the brewery. Milner's hand was cut, and there was evidence tending to show that a large window, from which escape could have been made from the brewery, was shattered about the time the officers broke in. He was in working clothes at the time. On the premises were found a pair of pantaloons and a vest, which were shown to be Milner's property, and in which were automobile license and other papers and certificates issued to him, some of them of a date as late as August. Connors was arrested at the same time as Milner, and each of them had in their possession a key which unlocked the premises. Milner refused to give his name when arrested, and while being taken to the police station attempted to throw away certain papers, among which was a check given to cash by one Morelli, a confessed bootlegger, who had a saloon adjoining the brewery. Both Milner and Hilliard were partners together in the Four-Mile Amusement Company, at

Erie; each of them took $10,000 of stock in the dairy company; they had advanced some $30,000 to it. If it was engaged in the milk business, and if its operations were confined to the milk business, the scope and rapidity of its development was remarkable. In the brewery were found a number of crates for shipping beer, on which were printed the notice, "Notify Hill-Mill Products Company, 212 East 8th St., Erie, Pa."

Milner gave no account of why he should have a key of the premises, when he had no connection with the alleged tenant. He and Hilliard were, as we have said, partners operating an amusement place called Four-Mile Run, near Erie, and it was shown that two electric motors, Nos. 1550 and 1449, which were found on the brewery premises, had been sold by the Armour Electric Company, of Erie, Pa., to Hilliard and Milner at the Four-Mile Amusement place. Milner explained his possession of the key of the premises found on his person by saying that he had received it from Hilliard. Hilliard gave no explanation whatever as to why he should have a key, when the property was in the possession of an alleged tenant, how he got it, or why he handed it over to Milner. The explanation of Milner was that this property had been bought by him and Hilliard for a shipping station for the milk plant, but there was no evidence of the matter ever having been brought to the attention of that company.

Under these circumstances, and with the jury having before them the men themselves, and with the prima facies of this incriminating plant being found in full operation on the premises lately bought by them after the dairy company was incorporated, we feel that the court below would have committed error in taking the case from the consideration of the jury, and we may say that a consideration of all the circumstances of the case satisfies us that the jury was quite warranted in disregarding the attempted explanations of these people, and in finding them guilty of carrying on this brewery. The jury was especially cautioned to give the defendants the benefit of all doubts. They seem to have resolved doubts in favor of Hagenlocher and the other defendants, but to have none as to the guilt of both Hilliard and Milner.

The judgment is therefore affirmed.

THOMPSON, District Judge, dissents in the Hilliard Case, on the ground that there was not sufficient evidence to sustain a verdict and judgment against him.